The first case for argument this morning is 15-1432 In Re Cordua Restaurants. Okay, Ms. King, whenever you're ready. Good morning. May it please the court, my name is Elizabeth King and I represent Cordua Restaurants in this appeal. If I may, I would like to reserve three minutes for rebuttal. Before I get started, I would just like the court to be aware, as we stated in our brief, that the outcome of this case has tremendous policy implications, not just for the appellant's mark and its rights in a 30-year mark that's been registered by the PTO three separate times and is protected by a registration under Section 14 of the Act, but for the legally equivalent mark for the same services, but also for many other services whose names identify a feature of those services, including, as we've already notified the court, of the Red Lobster case, where they've been ordered to disclaim lobster in connection with their restaurant services, despite acquired distinctiveness, and many other marks, including pesci for restaurant services, steak and ales, steak frites, the prime rib, which are both mentioned in the Esquire magazine and both are named for the signature dish of that restaurant. But those last two are not necessarily the same as this because they're compound marks, which would have to be considered as a whole. Correct, Your Honor, and we do. But, I mean, it just doesn't seem to me obvious that this necessarily carries over to that situation. Well, Your Honor, we believe that, for example, steak frites, which identifies a dish, is the same argument that the Board incorporated in its opinion. It's combining an English and a French word, and under a Princeton decision, we'd have to consider whether the mark as a whole was generic. It just doesn't, I mean, I don't think it's such a clearly sweeping ruling as you're suggesting it is. Okay, well, thank you, Your Honor. I'll just move on to the two instances in which we believe that the Board erred in applying the test on genericness. First, we believe that the Board failed to apply the law on genericness pursuant to Marvin Ginn, substituting a test for descriptiveness in place of genericness, and secondly, that they failed to analyze genericness and acquire distinctiveness based on the evidence of record, which includes the 321 registration protected under Section 14 of the Act a full month before the examining attorney submitted her brief on appeal. But the incontestability doesn't apply to genericness, right? Correct. In fact, as this Court noted in Merrill Lynch, incontestability only confers upon the registrant the incontestable right to use a mark in commerce, which, of course, doesn't apply in the case of genericness. But what the relevancy of the 1057B claim of ownership of that prior registration is evidentiary, because as the Supreme Court noted in the B&B hardware decision, Your Honor, a 1057B is prima facie evidence of the mark's validity. So once the application was filed making a claim under 1057B for the ownership of the 321 registration, it was at that point put into the record. And since that mark is the standard character iteration of the stylization of churascos for the identical services, it was incumbent upon the office to consider that registration as evidence for registrability of this mark. And had the office done that, they would have noted from the record contained in that file that churascos is not a churascaria, which goes directly to the heart of the genericness analysis. So in your theory, pizzas could be registered as a mark for a restaurant because the plural of pizza in Italian is pizze. No, Your Honor. That's actually not our position at all because for several reasons. First, we believe that – well, as a preliminary matter, I would just note that pizza is obviously a noun, and the pluralization is a noun. In this case – But the Italian for plural is pizza, right? Correct, Your Honor. So if you use pizzas under your theory, that would be okay. Well, actually, not necessarily, Your Honor, if I may continue to answer your question, because I think I can explain where the flaw in that reasoning is. As the PTO has acknowledged in their brief at 11, churasco is primarily an adjective for a style of cooking. Churascos is a coinage. Now, as Your Honor notes, I'm sure has noted, that in the Esquire magazine, that there is reference to the churasco steaks prepared in the churasco style as churascos, as a noun for steaks prepared in the churasco style. So under the Marvin Ginn test, using Your Honor's example of pizzas, the question would be whether or not the public primarily uses or understands pizzas primarily to refer to the genus of restaurant services. Now, we can expect, due to the ubiquitous understanding of the word pizzas, that it might be that there is evidence that shows that the public understands pizzas primarily to refer to the genus of restaurant services. But let's say there wasn't that evidence. Then does that mean pizzas is registrable for a restaurant? Well, I would submit that it's not. And the reason goes to exclusivity as opposed to genericness, which again is an example of how those two principles that have factored into registrability have been conflated in this case, because it would very likely be evidence, overwhelming evidence, of third-party usage of pizzas in the names of restaurants, regardless of whether or not it could be established through evidence that the public had a complete understanding of pizzas as referring primarily to restaurant services. And so it would be substantial exclusivity that would ultimately ban the use of pizzas in connection with that type of restaurant or any type of restaurant, as opposed to a genericness analysis. Because Marvin Ginn is narrowly tailored and very tightly tailored to only apply to instances where there is clear evidence that the public understands the term primarily to refer to the genus itself, as opposed to goods featured by the genus. And in this case, Your Honor, my four points on that are, first, they failed to analyze the genus correctly. Secondly, the PTO failed to apply this court's test on ascertaining the focus. But they did have evidence that churrascos is used to refer to Brazilian steak restaurants, right? Your Honor, the evidence that they submitted out of 195 Lexus searches only for the phrase churrasco restaurants, not for the mark churrascos,  you are supposed to show that the mark as filed. For example, in the Duopros decision, where the mark was snapped with an exclamation point, that this court held the PTO had dissected the mark and had knocked off the exclamation point in failing to ascertain descriptiveness. Or, for example, in Steel Building, where this court reaffirmed in the Princeton Vanguard case noted that there was not evidence that the public, when the term was compounded together, understood the compound iteration of steel building to be the equivalent of steel building as two words or steel buildings as two words. So it's very, very important that, in fact, their Lexus... So if they were using churrasco instead of churrascos, you'd agree that the decision was right? Not necessarily, Your Honor, because it would depend on... On what? Well, for a few reasons. First of all, because the evidence, if when you look at the ten, there are ten articles out of 195 that are missing, and there's no search for churrascos in the record at all, which gives strong indication under this court's ruling in Merrill Lynch that, in fact, those missing articles... Yeah, but you're talking about something else. Okay. My question is, if the mark were churrasco without the S, do you agree that it would not be registrable because it would be generic? If the mark were churrasco without the S, and as illuminated as this court has stated under Rita Selvier that churrascos was actually offering a churrascaria, then I think potentially there would be evidence to show that. But what we have here... So the only thing that saves you is the addition of the S. Well, it's not a minor issue, actually. It's not actually the only thing that saves us, and the addition of the S is not incidental, and there are two reasons why. First, this court has stated in Rita Selvier that the issue there on appeal was, of course, for the marklawyers.com, and the recitation of services was information exchange for legal services, which the court then looked behind the stated genus to determine what the appellant was actually doing in that instance. Now, keeping that backdrop in mind, well, there's ten articles, but seven of them are instructive in the record for the Lexis articles. Those seven articles indicate the type of restaurant is beyond doubt a churrascaria or rodizio. They mention Brazilian steakhouses, and the Flesh Trade Article A.118 of the appendix specifically says the cooking style is churrasco and the restaurants are called churrascarias. So utilizing the reasoning in Reed where the question is, well, would if the mark were churrasco, for example, and the services were churrascarias... Would steak be registrable for restaurants? Probably not, because steak is actually only exclusively a noun and a species, whereas churrascos is a coinage of steak prepared a certain way because the preparation style is churrasco, and the S on the end is a pluralization of that adjective. Can I ask you, what about that Esquire article, which uses the word churrascos at least twice to refer to, for example, it says Michael Cordua brought churrascos to Houston 20 years ago. It's not talking about the restaurant. Correct. It's talking about that particular kind of steak. Yes, it is. Why with the S, it's plural. Why isn't that evidence of generic? It absolutely is evidence of genericness for steaks. And if, in fact, and I would like to actually refer the court to the PTO's brief at 32 and 33 and 34 where they actually discuss this issue, if, in fact, churrascos had applied to register churrascos for steak, that would be very germane to the genericness analysis because, obviously, churrasco steak is a type of steak, and therefore generic for those goods. But the issue on appeal here is that churrascos has applied to register churrascos in connection with a full- Are you saying that the word steak could be used for restaurants because it's a word that applies to a particular cut of meat and not to restaurants? Is that your theory? No, no, no, not at all, Your Honor. It would always depend on whether or not the GIN What's the difference between registering steak and registering churrasco? Forget about the S for the moment. Okay. Well, the difference between registering steak from an evidentiary standpoint, of course, under GIN, it would depend on what the evidence showed the public used and understood that term and if it primarily referred to the genus of restaurant services. Having said that, the difference there is, of course, that steak is primarily a noun. Churrasco is primarily an adjective for a style of cooking. It is an expansive adjective with very many meanings. The other difference is that steak is a set species of food, whereas churrasco, as a noun for steak prepared that way, is a subspecies, and there's really no evidence in the record that the public would understand the term churrascos, which is actually the mark, to refer primarily to the genus of restaurant services. And going back to the Court's analysis in Reed, the Court stated, for example, as I mentioned, the recitation of services in Reed was information exchange about legal services, and the Court said it was appropriate to illuminate what was meant by that by looking at what the appellant was actually doing. And what it turned out was that the appellant's services were oriented to lawyers, and therefore that was considered to be the paramount aspect of those services and as such generic for those website services. In this case, upon examining the record to determine what churrascos is doing, it is abundantly clear, and I don't think anybody is arguing, that churrascos is not a churrascaria, and therefore the mark as used by the appellant is not being used in a generic fashion at all, even if this Court believes that churrasco... But steak is not a restaurant either, so under that theory you could register steak. Well, Your Honor, it would depend under this Court's test in Hotels, Lawyers.com, Mattress.com, whether or not the word sought to be registered was the focus of the genus as illuminated by what the appellant was offering. For example, if an appellant was a Japanese sushi restaurant and they wanted to register the name tacos, under Marvin Ginn, it would depend on whether or not the evidence showed that the public primarily understood the mark as referring to the genus of restaurant services. If it did not, then the second issue would be whether or not exclusivity would be attainable for a term that was ubiquitously used by third-party competitors under the substantially exclusive provision of the Lanham Act, which also operates to bar trademark rights if a term is ubiquitously used and diluted by competition, regardless of genericness. You almost exceeded your rebuttal time. We'll restore two minutes when we hear from the other side. Thank you. Okay, thank you. Good morning, Your Honors. May it please the Court. I just want to start by pointing out one thing about the use of the S and the allegation or the contention that churascos is a coinage. The application itself defines the plural word churascos as meaning barbecue, so the appellant itself uses and admits that it's a word in the very application we're looking at. What is the line here, and how are we supposed to deal with other cases which are similar? I mean, I understand the PTO's position with respect to this mark and this context, but suppose churascos were used for a vegetarian restaurant. Would it be permissible to register that, and could you include a disclaimer that would make it registrable? Where are we on something like that? Well, I think in a case like that, the short answer to the first part of your question is no, it would not be registrable because a vegetarian restaurant is a category of restaurants, and someone who came in for restaurant services with a vegetarian-related name or the name vegetarian. No, I'm saying churasco for a vegetarian. Oh, churasco. Yeah. They would be able to change from vegetarian to serving churascos immediately because it would be— Could they include that with a disclaimer? You can't disclaim the genericness of the very thing that you are seeking to register. There's nothing left at that point. So it is possible, I suppose, that if the goods and services were defined so as to make clear that it was not going to cover any sort of meat preparation, it's possible that in that sort of situation it would be okay. So how do you respond to the argument being made that this is like a situation where the word taco restaurant is used for a Japanese restaurant? That's essentially the same sort of a hypothetical. How do you distinguish the present case from that? Well, the present case is what they're contending here is that they're not a true churasco restaurant, which they define narrowly as a churascaria serving Brazilian food. And it doesn't matter that they're not a true churascaria in that limited sense because they are seeking a broad registration for restaurant services, and they could become that immediately upon getting the registration and then use that term churascos to keep people who are, in fact, grilling churascos or are a churascaria from using that mark in a descriptive sense. I think what you're saying is that in the taco example and in the vegetarian restaurant example that the problem is that they have a registration which would permit them to use the taco to cover a Mexican restaurant or the churasco to cover a restaurant serving churasco. But there's no way around that with a disclaimer which would say we disclaim the use of this mark for, in the case of the taco, for a Mexican restaurant or Mexican-themed restaurant or something like that. They can't do that? Well, not in the form of a disclaimer. I think that would have to come, if at all, in the goods and services identification. The disclaimer is really to disclaim rights in a particular aspect of the mark, but I think if you're excluding the particular services, then it's theoretically possible. So what you'd do is you'd say for restaurant serving meat or something like that. You'd limit it that way by the scope of the claim with respect to the mark? Is that the way you'd do it? Yes. If they wanted to use churascos for a vegetarian restaurant that excluded meat, they could put in the goods identification restaurant services excluding the service of meat. That's permissible to do that? You don't have to use standard descriptor? No, there can be limitations in the goods and services ID to make clear that you're within a subgroup of a broader category. I see. Okay. So here what we have, basically, there's no dispute. Everyone agrees that restaurant services, in the broad sense, is the genus. The dispute here is about the second part of the Marvin Ginn test, and what that is is whether the public understands the term to refer to the genus of restaurant services. And here what we have are two types of evidence that show that the public understands it to refer to the genus. The first is that churascarias, and I think they would agree with this, are a subcategory of restaurants, and they're generally called by people in this country churasco restaurants. Whether or not that's the technical term or not, that's how people understand it. And this court has, in other cases, held that when you have a term that is generic for a particular subcategory within a broader category that's claimed in the application, it can be generic. I'm thinking about the matchbox case, the preformed case, and the pasteurized case, which were cases we cited in our brief. The second way that it's, and that's, there's no dispute as to whether or not people call it churasco restaurants. They do, and there are 10 articles, as counsel said. The other is the lawyers.com and hotels.com and mattress.com cases, where another way you can show that a term is generic is if it defines a key aspect of the claimed services. And here their own menu shows that it's a key aspect of the services. They call it their signature dish. They concede it to the TTAB, that's the specialty of the house. And for those reasons, and also the Esquire magazine shows that they've been allotted for this particular dish. So for those two reasons, and those facts are undisputed, this mark is generic. Well, what if they, what if it weren't the signature dish, but it was just one of 16 different dishes on the menu? I thought what you were saying earlier was that as long as they're serving meat or churasco, that they couldn't have the mark whether it was a signature dish or not. Am I misunderstanding? No. If it was, if, for example, the mark was lettuce, all restaurants I would think serve lettuce in some form, either as a garnish or something that's shredded on some particular dish. It's not really in any sense the key aspect. So for this independent test of whether or not something is a key aspect of a service, I think lettuce would be something that would be difficult to say is generic for restaurant services, whether or not it was a vegetarian restaurant or a meat restaurant. So you could register lettuce for a restaurant? I think you could register lettuce for a restaurant. Because it's not descriptive of what they're serving? It might be descriptive of one of the ingredients that they do use, but I don't think it would be generic in the sense that it's a category of restaurants or, as in this case, a key aspect of a category of restaurants. I'm sorry? It wouldn't be understood by the public as a category of restaurants. That's right. If Your Honors have no further questions. Thank you. Your Honors, Your Honors' questions illustrate perfectly why the 321 registration was not taken into account. It is beyond dispute that churrasco is not a churrascaria. And as Mr. Solicitor Casagrande has acknowledged, the recitation of services could be amended to exclude churrascarias and rodizios, which would therefore absolutely take the mark outside the realm of genericness for these types of services. I don't think that's their position. No, it may not be their position, but if their position were adopted by this Court, then if a steakhouse specialized in a chocolate souffle dessert and called it their signature dish and they named themselves chocolate souffle or just souffle, that would be generic for restaurant services, too, because it identifies an item that's a signature dish. And their argument in their brief has 100% been oriented around a signature dish. Now, this Court has already spoken to the issue in the Omega case, which, interestingly, the Board cited as a defense of disregarding the 321 registration as any evidentiary value at all. And in Omega, this Court stated that the PTO has the right to require an amendment to the recitation of services in order to avoid future conflict. And in the Omega case, of course, the issue on appeal was whether or not the PTO had registered for a broad recitation of goods, chronographs, and the PTO was required, even though that was in the TMID manual and allowed, the PTO was requiring a narrower recitation. And what this Court wrote at the end of its opinion is that the PTO had assured the Court that by requiring Omega to adopt a narrower specification, that it would have no impact on their prior registrations. Now, obviously, they can't make that claim here because what they've done is nullified a prior registration, even though that registration was put into evidence by us and by the PTO in the 2F recommendation that we amended 2F. So I see I'm running out of time. May I briefly conclude? Sure. Okay. And so, therefore, we believe the proper order from this Court would be to remand back to the PTO requiring a recitation of services amendment, excluding churrasquerias and rodizios from the ID, as opposed to treating this as a gotcha game that potentially blows up a 30-year-old trademark protected by an incontestable registration that's also protected under Section 14 of the Act. Thank you. Thank both counsel. The case is submitted.